# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

|  |  |  |
|---|---|---|
| STEVE SERTUCHE, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:14-CV-010-O-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Steve Sertuche seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied his application for supplemental security income (SSI) under Title XVI of the Social Security Act (Act). The United States District Judge reassigned the case to this court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this court recommends the decision of the Commissioner be affirmed and this case be dismissed.

## I. STATEMENT OF THE CASE

Plaintiff filed his claims for SSI on January 27, 2011. His claim was denied initially April 25, 2011, and again upon reconsideration July 27, 2011. On June 11, 2013, an Administrative Law Judge (ALJ) held a hearing at which Plaintiff testified. Tr. 31–72. In a written decision dated July 25, 2013, the ALJ determined that Plaintiff was not disabled under the Act. Tr. 11–25.

Specifically, the ALJ decided: Since January 27, 2011, Plaintiff had not engaged in substantial gainful activity (SGA); Plaintiff had "the following severe impairments—status post

fusion, degenerative disc disease, obesity, and depression"; and Plaintiff's impairments did not

meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. Tr. 13–19. The ALJ also determined that Plaintiff had the following residual

functional capacity

> to perform light work as defined in 20 C.F.R. § 416.967(b) except the claimant is
> able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and
> stairs, but never climb ladders, ropes, or scaffolds. The claimant is able to
> understand, remember, and follow simple and detailed instructions. The claimant
> is able to interact appropriately with coworkers, supervisors, and the general
> public for work purposes.

Tr. 19.

Finally, the ALJ determined that considering Plaintiff's age, education, and experience,

together with his RFC, there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform. Tr. 24. Accordingly, the ALJ determined that Plaintiff was

not disabled under the Act, and denied his application for SSI. The Appeals Council denied

review on December 6, 2013. *Id.* at 1–5. Therefore, the ALJ's decision is the Commissioner's

final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405

F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals

Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

Plaintiff graduated high school and attended three years of college, earning a certificate in

graphic design. While drawing remains a hobby of Plaintiff's to this day, he never pursued

graphic design professionally. He has past relevant work as a tow truck dispatcher and a shuttle

driver. Tr. 23.

Plaintiff was in an auto accident in 2007, which either caused or contributed to persistent

back pain. He underwent surgery on his back in 2008, but experienced little relief. He alleges his

back pain prevented him from finding work, so he stayed home with his young child during the day while his wife worked. After a time, Plaintiff and his wife separated and Plaintiff moved in with his mother and father. Since being with his parents, Plaintiff has been unable to find work. He testified his days are largely spent at home watching television and laying down. He claims he is depressed about the circumstances in his life, and becomes anxious around people. He maintains that suicidal thoughts have entered his mind. Plaintiff alleges that his mental and emotional impairments, combined with his physical impairments, render him disabled under the Act.

### III. STANDARD OF REVIEW

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b) (2013).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four

steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). "Substantial evidence is enough that a reasonable mind would support the conclusion. The evidence must be more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (citations and internal quotation marks omitted). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff raises several issues on appeal, namely: (1) whether the ALJ properly analyzed the severity of Plaintiff's diabetes and carpal tunnel syndrome under *Stone v. Heckler*; (2) whether substantial evidence supports the ALJ's finding that Plaintiff's carpal tunnel syndrome

was not severe; (3) whether the ALJ made a sufficient RFC finding; (4) whether the ALJ failed to indicate why she found the testimony of the medical expert partially credible; (5) whether the ALJ made sufficient findings of fact as to why she found the opinion of the State Agency physician, Susan Thompson, M.D., not credible; (6) whether the ALJ made sufficient findings of fact as to the credibility and vocational impact of Plaintiff's allegations of hallucinations and suicidal ideation; and (7) whether the ALJ erred in not ordering a consultative medical and psychiatric exam. *See* Pl.'s Br. at 2–3, 11, 13, 15, 19–20, 22.

### I. Severity of Plaintiff's diabetes and carpal tunnel syndrome

At step two, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1991). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (internal quotation marks omitted).

At step two, the ALJ found Plaintiff had several "severe" impairments; however, she found Plaintiff had some impairments which were not severe. To begin her analysis, the ALJ stated the following: "These impairments cause more than minimal limitations in the claimant's ability to perform basic work activities, and are, therefore 'severe.'" Tr. 13. The ALJ went on to discuss in detail Plaintiff's impairments and the circumstances surrounding the origins, care, and aggravating factors of Plaintiff's impairments. The ALJ discussed at length Plaintiff's history of back pain, as well as his history in regards to mental health, obesity, and depression. Tr. 15. The ALJ cited the extensive medical evidence that supported a conclusion that these impairments were "severe"; *i.e.*, that these impairments had such a minimal effect on Plaintiff that it would be

expected to interfere with Plaintiff's ability to work. Tr. 13–15. The ALJ also discussed, *inter alia*, Plaintiff's diabetes and carpal tunnel syndrome of the left hand. Tr. 16. The ALJ noted that the record reflected Plaintiff's diabetes had always been "well controlled" with oral medication. *Id.* The ALJ also noted that the record showed Plaintiff had simply a "remote history of left carpal tunnel release, which has not required further testing or intervention." *Id.* The ALJ then, explicitly citing *Stone v. Heckler*, concluded that Plaintiff's diabetes and carpal tunnel did not have such a minimal effect as to be expected to interfere with Plaintiff's ability to work. *Id.* Accordingly, the ALJ found Plaintiff's diabetes and carpal tunnel to be not severe. Plaintiff's assertion that the ALJ failed to utilize the correct *Stone v. Heckler* minimal effect standard falls flat. The opposite is plain. Tr. 13–15. This conclusion speaks directly to Plaintiff's second issue before the court.

## II. Plaintiff's carpal tunnel syndrome

As stated, substantial evidence means "more than a scintilla, but it need not be a preponderance," *Taylor*, 706 F.3d at 602, and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). A finding of no substantial evidence is appropriate "only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (internal quotation marks omitted).

Again as stated, the ALJ surveyed the record and uncovered only a "remote history of left carpal tunnel release, which has not required further testing or intervention." Tr. 16. The medical expert, physician Ollie Raulston, M.D., canvassed Plaintiff's whole medical record and testified at the administrative hearing to the same. *See* Tr. 41. Dr. Raulston stated, "There's . . . a

historical reference to a carpal tunnel syndrome, but it was released in December of '08; but again, there's no—no—there's no history relevant to this, other than a historical reference. There's no examination of the hands to prove or disprove the presence of carpal tunnel syndrome." *Id.* The ALJ noted that a dearth of other references to or treatments for carpal tunnel indicated that such impairment had such a minimal effect on Plaintiff that it would not be expected to interfere with Plaintiff's ability to work. Tr. 16. Accordingly, a finding of non-severe was appropriate. That a former ALJ in a prior proceeding recited Plaintiff's subjective complaints of pain as to carpal tunnel is inapposite in the present proceeding. *See* Pl.'s Br. at 12 (quoting a former ALJ's opinion, to wit: "[Plaintiff] lost some sensitivity since he had carpal tunnel surgery on both hands. His hands are doing better, but they still cause some pain. Additionally, his hands are occasionally numb when he wakes up."); *see also Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (an ALJ is not bound by the decision of a previous ALJ). The court further notes that the former ALJ ultimately found Plaintiff not disabled. *See* Tr. 101. It is not the case that there is a conspicuous absence of credible choices as to whether Plaintiff's carpal tunnel syndrome was severe. *Johnson*, 864 F.2d at 343–44. Nor is it the case that there is no contrary medical evidence. *Id.* Substantial evidence supports the ALJ's conclusion that Plaintiff's carpal tunnel syndrome was not "severe."

### III. ALJ's RFC finding

RFC is the most an individual can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (internal quotation marks omitted) (quoting SSR 96-8P, 1996 WL 374184 (July 2, 1996)).

The ALJ considered several pieces of evidence, including Plaintiff's testimony at the administrative hearing (Tr. 19–21), disability field reports and function reports (Tr. 20), and medical records of treatment from various sources (Tr. 20). The ALJ discussed Plaintiff's alleged physical impairments, including back pain, obesity, and use of his hands in daily life. Tr. 20–21. The ALJ also discussed Plaintiff's alleged mental impairments, including depression, anxiety, and suicidal ideation. *Id.* Plaintiff claims the ALJ erred by making no finding regarding Plaintiff's ability to reach and handle. Plaintiff's characterization of the ALJ's opinion is not accurate.

At the administrative hearing the ALJ questioned Plaintiff about his ability to reach and handle, inquiring whether Plaintiff could pick up a gallon of milk. Tr. 46–47. Plaintiff stated that he had the ability to pick up a gallon of milk from the ground and if he were seated, he had the ability to hold two gallons of milk, one in each hand. Tr. 47. Also at the administrative hearing, Plaintiff testified that his hobby was drawing, which involves the extended use of his hand. Tr. 53. The ALJ referenced Plaintiff's ability to handle milk and manipulate drawing implements in her opinion. Tr. 20–21. At the administrative hearing, the ALJ proposed a hypothetical to the vocational expert (VE) of a person who could lift, carry, push, or pull twenty pounds occasionally, and ten pounds frequently. Tr. 66. The ALJ asked the VE whether the hypothetical person, who had additional limitations, could perform Plaintiff's past relevant work. *Id.* The ALJ added and subtracted limitations to the hypothetical person, questioning the VE whether there were jobs in the Texas and national economy that such hypothetical person could perform. *Id.* At no point were the hypothetical person's ability to reach and carry an issue for the proposed jobs. *Id.* at 66–70. Plaintiff's counsel was given a chance to question the VE, to inquire as to the affects Plaintiff's alleged limited ability to reach and handle on the jobs he could perform.

Plaintiff's counsel declined to take the opportunity. That is, Plaintiff's counsel declined to explore the work-related activities involved in the jobs the VE testified Plaintiff could perform. *See Perez*, 415 F.3d at 464.

In her opinion, the ALJ detailed Plaintiff's ability to pick up and hold milk, and manipulate drawing instruments. Tr. 19–23. The ALJ noted the VE's testimony—making special note of Plaintiff's alleged handling limitations—and concluded that Plaintiff could perform the jobs the VE proposed. Tr. 24–25. It is apparent, then, that the ALJ performed a function-by-function assessment of Plaintiff's ability to perform work related activities. The ALJ considered Plaintiff's ability to reach and handle, despite Plaintiff's assertion to the contrary. Substantial evidence, including Plaintiff's own testimony as to his abilities, supports the conclusion that Plaintiff retained the RFC the ALJ found him to have.

### IV. Dr. Raulston's Testimony – Only Partially Credible?

The ALJ considers medical opinions, along with all the other evidence, in determining whether a claimant is disabled. *See* 20 C.F.R. 404.1527(b). An ALJ may solicit the testimony of a medical expert to determine the extent to which a claimant's subjective complaints are supported by the medical evidence. *See Carey v. Apfel*, 230 F.3d 131, 139 (5th Cir. 2000). "[O]bjective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged by the claimant. *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992).

At the administrative hearing, the ALJ took testimony from medical expert Dr. Raulston, who had reviewed Plaintiff's medical history. Tr. 40–43. Dr. Raulston rendered opinions as to Plaintiff's limitations, stating, *inter alia*, "I would limit [Plaintiff's] lifting to—and carrying—to 20 pounds occasionally; 10, frequently. Objectively, I don't see any limitations as far as standing

and walking, sitting; although, on the basis of pain, I would probably recommend an opportunity to change positions on an hourly basis, for about five minutes." Tr. 42. The ALJ adopted the medical expert's opinions in their entirety, save for the position change limitation based only on Plaintiff's subjective complaints of pain. Tr. 23. The ALJ was clearly entitled to adopt Dr. Raulston's opinion that no objective evidence in the record supported a positional change limitation, an opinion uncontested by Plaintiff. *Anthony*, 954 F.2d at 296. To the extent that what the ALJ rejected was not merely Plaintiff's unsupported complaints of pain, but Dr. Raulston's opinion that Plaintiff should have positional changes, "the ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (internal quotation marks omitted). Meaning, the ALJ was free to reject Dr. Raulston's positional change finding which did not comport with the rest of the objective medical evidence, and adopt all the medical expert's other findings which did. *See id.*; *Anthony*, 954 F.2d at 296. Substantial evidence supports the ALJ's conclusion that all opinions but the positional change finding by Dr. Raulston were consistent with the objective medical record and were entitled to considerable weight.

## V. Credibility of Reviewing Physician Susan Thompson, M.D.

From the off, Plaintiff's point of error here is inapposite. He mistakes a prior ALJ decision as the decision of the ALJ in the present case and misinterprets terms defined in the regulations. *See* Pl.'s Br. at 19. Specifically, the regulations define "episodes of decompensation" and "repeated episodes of decompensation, each of extended duration" in 20 C.F.R. § 404.

> *Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a

combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (*e.g.*, hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. § 404, Subpart P, Appendix 1 § 12.00(C)(4) (emphasis in original).

The ALJ stated: "Although the claimant has required three instances of inpatient care, one of which was prior to the period for adjudication, but none of which lasted for an extended duration as contemplated and defined by the listings; therefore, the decision reflects no episodes of compensation." Tr. 22. The ALJ referenced a Psychiatric Review Technique performed by Dr. Thompson. *See* Tr. 826–39. Dr. Thompson stated that Plaintiff "has been hospitalized for SI [suicidal ideation] 4/09, 12/09, 12/10." Tr. 838.

There is no indication, however, that these hospitalizations meet the requirements of "repeated episodes of decompensation, each of extended duration" set forth in § 12.00(C)(4), quoted above. The only indication of length is that Plaintiff's December 2010 hospitalization lasted three days. Tr. 838.

Plaintiff mistakenly points to the decision of a former ALJ who found—based on a different administrative record—that Plaintiff had one episode of decompensation. *See* Pl.'s Br. at 19. But Plaintiff does not show that the former ALJ's decision is binding on the current ALJ. *See Muse*, 925 F.2d at 790. Accordingly, Plaintiff's point of error here is misconceived.

**VI. ALJ's Assessment of Plaintiff's Credibility**

"The RFC assessment must be based on all of the relevant evidence in the case record."

SSR 96-8p, 1996 WL 374184 (July 2, 1996). Part of the evidence the ALJ must consider is a

claimant's statements about his own symptoms. *See* 20 C.F.R. §§ 404.1529(d), 404.1545(a).

> In determining the credibility of the individual's statements, the
> adjudicator must consider the entire case record, including the objective medical
> evidence, the individual's own statements about symptoms, statements and other
> information provided by treating or examining physicians or psychologists and
> other persons about the symptoms and how they affect the individual, and any
> other relevant evidence in the case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The ALJ recounted Plaintiff's testimony as to both hallucinations and suicidal ideation.

Tr. 20–23. The ALJ noted that Plaintiff had heard voices in the walls, seen shadows, and heard

sounds from the radio. Tr. 20. The ALJ further discussed Plaintiff's testimony as to his own daily

activities, and the extent to which Plaintiff's alleged mental impairments affected his daily

activities. Tr. 20–23. Plaintiff testified that he could maintain his personal care almost totally

independently, including preparing simple meals, driving and navigating a vehicle to transport

his son to and from school, shopping at stores, and other activities associated with a finding that

he is not disabled. *See id.*

The Commissioner points to several instances where Plaintiff visited a medical

professional and failed to allege or even mention he suffered from hallucinations. *See, e.g.*, Tr.

325, 334, 524. There is evidence in the record of Doctors explicitly finding Plaintiff was negative

for hallucinations. Tr. 545, 656, 819

As to suicidal ideation, Plaintiff can point to no consensus in the record. For example, at

one point he adamantly denies suicidal thoughts and admitted he only proclaimed such out of

anger (Tr. 324). At another point he stated that though the thought of suicide crossed his mind he

had "too much to live for"; he also stated, "I don't think I'd ever try it." Tr. 545. Doctors have

found "suicidal ideation is not present." Tr. 769. *See also* Tr. 915 (same). At times, Plaintiff will fail to allege suicidal thoughts or ideation during medical appointments. *See, e.g.*, Tr. 656, 776, 819.

In assessing Plaintiff's credibility, the ALJ was required to consider all this contradictory evidence in the record: Plaintiff's assertions that he suffered from hallucinations and suicidal thoughts; Plaintiff's failure to assert the same in front of physicians; Plaintiff's assertions as to his daily activities; and physicians' opinions that Plaintiff did not suffer from hallucinations or suicidal ideation. *See* SSR 96-7p. Even in a case in which the evidence indicates a mixed record concerning a claimant's health problems and limitations upon his ability to work, it is the ALJ's responsibility to weigh the evidence. *Chambliss v. Massanari*, 269 F.3d 520 (5th Cir. 2001) (*per curiam*). There is substantial evidence in the record for the ALJ to have considered the whole record and determined that Plaintiff's assertions he suffered from hallucinations and suicidal thoughts were only partly credible.

## VII. Ordering a Consultative Exam

The ALJ is obligated to develop the record fully and fairly to ensure her decision regarding a claim for benefits is an informed decision based upon sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The regulations provide that when the information the Commissioner needs to evaluate a claimant is not readily available from the records of a claimant's treatment source, the Commissioner may order a consultative examination at the expense of the Commissioner. 20 C.F.R. §§ 404.1512(e), 416.912(e). In some circumstances, a consultative examination might be necessary in order for the ALJ to fulfill her duty to fully and fairly develop the record. *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989). However, "[a] consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient

to raise a suspicion concerning a non-exertional impairment." *Brock*, 84 F.3d at 728. When the evidence of record supports a conclusion that a claimant is not disabled, a consultative exam is not necessary. *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977). Further, remand on grounds of lack of substantial evidence is appropriate only where "the claimant shows (1) that the ALJ failed to fulfill [her] duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Brock*, 84 F.3d at 728.

Plaintiff has failed to raise a suspicion concerning either his carpal tunnel syndrome or his psychiatric condition. The court has examined Plaintiff's claims relating to carpal tunnel syndrome. *See supra* Parts I, II. In short, substantial evidence supports the ALJ's conclusion that Plaintiff's carpal tunnel is not severe. The presence of such substantial evidence means no consultative examination was required to gather further evidence for the ALJ to rule upon Plaintiff's carpal tunnel. *Turner*, 563 F.3d at 671.

Plaintiff also asserts the ALJ should have ordered a consultative psychiatric exam because the medical expert at the administrative hearing, Dr. Raulston, did not give a psychiatric opinion, "nor does the evidence include any examining or treating physician psychiatric opinion." Pl.'s Br. at 22. First, Plaintiff does not define what an "examining or treating physician psychiatric opinion" is. There are ample examples of examining and treating physicians opining as to Plaintiff's psychiatric condition. *See, e.g.*, Tr. 324, 545, 656, 769, 819. Second, and more to the point, Plaintiff does not meet his burden to raise a suspicion concerning a non-exertional impairment. *Brock*, 84 F.3d at 728. Plaintiff broadly states that a "psychiatric opinion" is required, but neither cites authority for such proposition, nor annunciates a non-exertional impairment a consultative examination would elucidate. *See id.* Plaintiff fails to show how additional consultative examinations were required in addition to the more than 1,000 page

record. His argument here must fail.

## V. CONCLUSION

Because substantial evidence supports the ALJ's determinations, her decision is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

For the foregoing reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

Signed this 7th day of August, 2015.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**